UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTOLIN ANDREW MARKS,

    Plaintiff,

v.

MARK GILES *et al*.,

    Defendants.

CASE NO. C07-5572RJB/JRC

REPORT AND RECOMMENDATION

Noted for October 30, 2009,

    This 42 §1983 Civil Rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrate Judge's Rules MJR 1, MJR 3, and MJR 4. Before the court is defendant's motion for summary judgment (Dkt. # 60). Plaintiff did not respond despite being given 69 days to do so.

PROCEDURAL FACTS

    On July 22, 2009 the remaining defendants in this action filed a motion for summary judgment (Dkt. # 60). Plaintiff did not file a response and instead filed motions for additional

REPORT AND
RECOMMENDATION - 1

discovery (Dkt. # 62 and 63). The discovery cutoff date had passed and the court denied the motions for additional discovery, but gave the plaintiff an additional month to respond to the pending motion for summary judgment (Dkt # 68). Plaintiff did not respond and instead filed a motion for reconsideration in which he also asked the court to stay the motion for summary judgment. Local Rule 7 (h)(2) states that a motion for reconsideration does not stay other procedures. Thus, the time for filing a response was not tolled by the filing of the motion for reconsideration. The time for filing a response has passed and this court will not accept a late response in this case. Plaintiff was given two months to file a response and he did not avail himself of that opportunity.

As defendant's motion for summary judgment is uncontested the court accepts defendants' introduction and statement of the facts as verities. Defendants state:

### INTRODUCTION

Plaintiff, a native and citizen of Trinidad, was taken into immigration custody in August 2005, pending his removal from the United States. While detained at the Northwest Detention Center ("NWDC"), Plaintiff committed several rule violations and was sentenced to 66 days in disciplinary segregation. Plaintiff filed this civil rights/ <u>Bivens</u> action raising various claims pertaining to the rule violations, the disciplinary proceedings, the resulting punishment, and the conditions of confinement in the Special Management Unit ("SMU"). Plaintiff named as Defendants three federal officers employed by U.S. Immigration and Customs Enforcement ("ICE") and assigned to the NWDC: Jack Bennett, the then Assistant Field Office Director; Tom Giles, the then Supervisory Detention and Deportation Officer; and Mike Ruckstuhl, a Detention and Deportation Officer. Plaintiff also named several officials who work for The Geo Group, Inc. ("Geo"), the private corporation that runs the NWDC. Plaintiff subsequently entered into a stipulated settlement with the Geo officers, and the only remaining Defendants are the three federal Defendants.

On September 24, 2008, the Court granted in part and denied in part the federal Defendants' motion for summary judgment. The Court dismissed all of Plaintiff's claims pertaining to the rule violations, the disciplinary hearing, and the amount of punishment imposed for the violations. The Court denied the motion for summary judgment on the conditions of confinement claim, without prejudice, pending further discovery. Since then, the parties have engaged in

REPORT AND
RECOMMENDATION - 2

substantial discovery, discovery has closed, and the conditions of confinement claim can be decided on summary judgment.

. . .

## FACTS

On August 27, 2007, Officer Giles entered the B-Unit at the NWDC to speak with Plaintiff in response to prior grievances Plaintiff had submitted. See Ex. A-2. During the interview, Plaintiff became very loud and began using vulgar language towards Officer Giles in front of other detainees. Id. Officer Giles attempted to continue discussing the grievances, but Plaintiff continued to escalate his conduct to the point where he abruptly walked away from Officer Giles. Id. Ultimately, Officer Giles was unable to interview Plaintiff regarding his grievances, and had to exit the unit to allow Plaintiff to calm down. Id. This rendered Officer Giles unable to assist other detainees who were disrupted by Plaintiff's conduct. Id.

Immediately after the incident, Geo executed an Administrative Detention Order placing Plaintiff into the SMU pending charges for violations of the following codes: 308 –insolence toward staff; 398 - interfering with a staff member in the performance of his duties; 399 - conduct that disrupts/interferes with the security or orderly operation of the facility; 404 - use of obscene language; 220 - being found guilty of any combination of three or more offenses within 90 days; and 299 - conduct that disrupts/interferes with the security or orderly operation of the facility. See Ex. A-3. The same day, Geo officers conducted an investigation into the incident. See Ex. A-4. The following day, on August 28, 2007, Plaintiff had a hearing on the charges before an Institution Disciplinary Panel. See Ex. A-5-7. Plaintiff pled guilty to violating Rule 404 and Rule 308. See Ex. A-8. The Panel found that Plaintiff also violated Rule 398 and 299, and recommended that he be given 66 days of disciplinary segregation. See Ex. A-9. On August 30, 2007, the Geo Facility Administrator (Warden Wigen) agreed with the Panel's findings and accepted the recommended punishment. See Ex. A-9-10.

The SMU at the NWDC is operated in compliance with ICE/DRO Detention Standards for Special Management Units, attached as Exhibit B. It is an intensely supervised and managed Unit. See Ex. B, generally. In accordance with the Detention Standards, Geo officers maintain a Permanent SMU Log where they record "all activities concerning the SMU detainees." See Ex. B-5, B-16. The Permanent SMU Log detailing Plaintiff's time in segregation is attached hereto as Exhibit C. Officers generally make log entries every fifteen minutes, and even more frequently if a detainee is on a special watch. See Ex. C, generally. Officers record every time they complete a health and welfare check, a facility head count, and a shift change. Id. They also record and describe individual events ranging from the mundane - such as a detainee being given a meal or returning from a shower - to the extraordinary - such as a detainee breaking the window of his unit. Id. Thus, the Permanent SMU Log is the most reliable and accurate portrayal of the activities and conditions in the segregation unit.

REPORT AND
RECOMMENDATION - 3

Plaintiff entered the SMU on August 27, 2007, at 1605, and was booked out on October 18, 2007 at 1045. See Ex. C-2, 223. He was initially assigned to unit 206, but he refused the assignment. See Ex. C-2. Geo officers reassigned Plaintiff to unit 103, which he accepted. Id. Within one hour of entering the SMU, Plaintiff complained of shortness of breath and was taken to medical for evaluation. See Ex. C-2-3. He returned from medical later that evening, and was placed in unit 105, which remained his unit assignment until discharge from the SMU. See Ex. C-3; Ex. D, generally.

The Permanent SMU Log confirms that during the 66 days Plaintiff was in the SMU, he made regular trips to the showers, recreation, the law library, attorney visits, and intake. Plaintiff also received regular meals and medications. It was not, however, uncommon for Plaintiff to refuse showers, medication, or recreation time. Other than routine activities of daily living, the Permanent SMU Log contains the following entries pertaining to Plaintiff:

- 8/27: Plaintiff was booked in at 1615. At 1712, he reported chest pain and shortness of breath and was taken to medical for evaluation. He returned two hours later (Ex. C-2-3);
- 8/28: Plaintiff received one Kite and one Informal Grievance (Ex. C-9);
- 9/4: Plaintiff received one Kite from the library (Ex. C-40);
- 9/7: Plaintiff requested a shower at 1236 after refusing one in the morning. A Geo lieutenant spoke with Plaintiff regarding his phone call restriction and using the shower. He was escorted to the shower later that evening (Ex. C-53-54);
- 9/12: Plaintiff received a Kite (Ex. C-83);
- 9/14: Plaintiff requested a phone (Ex. C-86);
- 9/16: Plaintiff tried to submit more than one Kite. When he was told he could not submit multiple Kites, Plaintiff became upset and told the Geo officer to give the Kites back. Plaintiff then demanded he be given gloves to put his medication on. Plaintiff was told the gloves are for workers and cleaning only. Plaintiff again became upset. The Geo officer called a Geo lieutenant to discuss the gloves and Kites issue. The lieutenant advised that Plaintiff was not to receive gloves and must submit only one Kite at a time (Ex. C-96);
- 9/21: Plaintiff advised the guard that if he or his unit mate was not moved, it would get physical. Plaintiff's unit mate was immediately moved (Ex. C-113);
- 9/22: Plaintiff requested a grievance because he did not receive peanut butter with his breakfast tray (Ex. C-117);
- 9/27: Plaintiff complained that he had cold beans on his breakfast tray (Ex. C-137);
- 9/28: A medical IMS was activated on Plaintiff at 1109 for chest pain, and he was taken to medical (Ex. C-143);
- 10/4: Plaintiff requested to use the phone, and was told had to make request through Lieutenant Harper (Ex. C-171);

In addition to the Permanent SMU Log, Geo officers maintain a daily log for each detainee in the SMU entitled, Daily Log of Special Housing Unit Detainee ("Daily Log"). Plaintiff's Daily Log is attached as Exhibit E. It confirms that Plaintiff was offered three meals per day, he accepted every meal offered, and usually ate 100% of the meal. See Ex. E, generally. Plaintiff was offered showers and exercise twice a day, but he often refused these activities. Id. The Daily Log also confirms that a Geo Shift Supervisor and medical personnel employed by Public Health Service ("PHS") visited Plaintiff daily while he was in the SMU. Id.

In addition to the Permanent SMU Log and the Daily Log, Geo officers also maintain an Individual SMU Record for every detainee in the SMU. The Individual SMU Records for Plaintiff are attached as Exhibit F. Each week, Geo officers certified to the Geo Facility Administrator (Warden Wigen) and the ICE Officer In Charge (then AFOD Jack Bennett) that Plaintiff was being offered showers and exercise twice a day, meals three times a day, daily visits from the medical staff, and that Geo officers where properly completing the special housing unit record. See Ex. F generally. Plaintiff was given a copy of the Records, indicated by his signature on all but two Records. Id.

In addition to the Logs and Records Geo officers maintain on a regular basis for detainees in the SMU, Geo officers also complete Incident Reports and Information Reports for any significant event involving a detainee in the SMU. All reports pertaining to Plaintiff are attached as Exhibit G. With the exception of the Incident Report that formed the basis of his punishment in disciplinary segregation, there were 7 reports involving Plaintiff during the 66 days he was in the SMU. One report details Plaintiff's misuse of authorized medications that were found when he was moved from general population into the SMU. See Ex. G-3. Another details Plaintiff's demand to use a phone. See Ex. G-4. Another describes Plaintiff lying to a staff member and attempting to send mail as "legal mail." See Ex. G-5. Two other reports document Plaintiff's request for a unit change, which was immediately granted. See Ex. G-6-7. And the remaining two reports describe Plaintiff's request for medical attention due to chest pains. See Ex. G-8-9. There are no other reports pertaining to Plaintiff during his time in the SMU in from August to October 2007.

(Dkt. # 60 pages 1 to 6).

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to

judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradict facts specifically attested by the moving party. Id. Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

Local Rule 7 (b) (2) states that when "a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Plaintiff was given 60 days to file a response. Plaintiff filed no response.

Defendants argue all claims against defendants Giles and Ruckstuhl have been dismissed and the only remaining claim is against defendant Bennett (Dkt. # 60 pages 8 and 9). Defendants

argue defendant Bennett did not personally participate in any conduct that led to an alleged violation (Dkt. # 60 pages 9 to 12).  They also argue there has been no constitutional violation, the allegations of horrific conditions of confinement made by plaintiff are simply untrue, and the defendants would enjoy qualified immunity from damages (Dkt. # 60, pages 12 to 24).  The final argument notes that plaintiff has been released from custody and lacks standing to seek injunctive relief (Dkt. # 60, pages 24 and 25).

## DISCUSSION

*A.   Defendants Giles and Ruckstuhl.*

The amended complaint, (Dkt. # 4), does not contain any allegations that either of these defendants played any part in creating or controlling the conditions of confinement in the segregation unit.   These two defendants are therefore entitled to dismissal with prejudice from this action.

*B.   Personal participation.*

A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position.  <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 694 n.58 (1978).  A theory of *respondeat superior* is not sufficient to state a claim under Section 1983.  <u>Padway v. Palches</u>, 665 F.2d 965 (9th Cir. 1982).  Further, the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation.  <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct.  <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir.), <u>cert. denied</u>, 469 U.S. 845 (1984).

Here, defendant Bennett reviewed and signed weekly reports and after action reports that are attached to the motion for summary judgment (Dkt. # 60, Exhibits D and H). The reports show this defendant being aware that some detainees are given lengthy disciplinary segregation terms, the longest in the exhibits being 696 days (Dkt. # 60, Exhibit D). There is nothing in the record to indicate any detainee actually serves anywhere near that length of time in disciplinary detention. Further, the after action reports describe some detainees eating feces and smearing feces on their cell walls. The reports show those detainees are ordered to go to the shower to clean up and if they refuse they are moved to the shower by force. The cell is then cleaned (Dkt. # 60, Exhibit H). The exhibits show defendant Bennett being made aware of the conditions as part of his supervisory duties. This defendant would not be entitled to dismissal based on lack of personal participation, but may be entitled to dismissal because the conduct of the prison officials did not violate any duty or right owed to the plaintiff.

  *C.*  *The conduct of the prison officials.*

The Eighth Amendment prohibits infliction of cruel and unusual punishment. The Eighth Amendment is violated when a detainee is deprived of the minimal civilized measure of life's necessities. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Young v. Quinlan</u>, 960 F.2d 351, 359 (3rd Cir. 1992). To establish an Eighth Amendment violation, a plaintiff must allege both an objective element--that the deprivation was sufficiently serious--and a subjective element--that a prison official acted with deliberate indifference. <u>Young</u>, 960 F.2d at 359-60. Only deprivations denying the minimal civilized measures of life's necessities are sufficient to rise to the level of an Eighth Amendment violation. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). For prison conditions to rise to the level of cruel and unusual punishment, there must be evidence of a serious physical or emotional injury resulting from the challenged condition. <u>Strickler v. Waters</u>,

989 F.2d 1375 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

The evidence in this case does not support the proposition that defendant Bennett was deliberately indifferent. The reports show plaintiff eating and receiving proper care (Dkt. # 60 Exhibit E). Further, the reports show that while other detainees may cause conditions to become unsanitary, prison officials acted when those conditions existed. The prison officials took the steps needed to regain control of the area and sanitize the cell and persons involved (Dkt. # 60 Exhibit H).

Indeed, the after action report for an incident occurring September 30, 2007, shows defendant Bennett being on cite as part of the supervisory staff reviewing this use of force. The incident involved a detainee eating his own feces and smearing fecal matter on his cell. The detainee was ordered to the showers and refused the order. An extraction team took him from his cell to the showers. The incident report specifically states the team escorted the detainee to the showers "so his cell and toilet can be cleaned." (Dkt. # 60 Exhibit H). Another after action report reviewed by defendant Bennett was for a use of force that occurred two days later, on October 2, 2007. The detainee was spreading feces on his cell, his bunk, and himself. Again, the detainee was moved to the showers so the cell could be cleaned in addition to the detainee (Dkt. # 60, Exhibit H). Prison officials employed force to move the detainee to the showers, and to remove him from the shower area and back to his cell. Later that same day staff observed what appeared to be blood on the detainee's toilet. Again, staff had to use force, but they entered the cell and addressed the situation (Dkt. # 60 Exhibit H).

These exhibits provide the information missing from the prior motions to dismiss. The fact that detainees or inmates may cause conditions to become unsanitary is beyond prison

officials control. It is the response of the officials in addressing the situation and rapidly fixing the unsanitary condition that prevents the situation from becoming an Eighth Amendment violation. Plaintiff has failed to show the defendant was deliberately indifferent. Thus, defendant Bennett is entitled to summary judgment.

### D. Qualified Immunity.

It is well settled that a public official who performs a discretionary function enjoys qualified immunity in a civil action for damages, provided that his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 480 (1991).

The Supreme Court established a two-part test for determining whether an official is entitled to qualified immunity. First, the Court must determine whether the facts, when taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Cruz v Kauai County, 279 F.3d 1064 (9th Cir. 2002); Boyd v Benton County, 374 F.3d 773 (9th Cir. 2004). Then, if a violation is articulated, the Court must ascertain whether the constitutional right at issue was "clearly established" at the time of the alleged violation. Saucier, 533 U.S. at 201; Cruz at 1069.

Here, the defendant was not deliberately indifferent to the conditions of confinement and reviewed use of force reports. The reports document proper action being taken to ameliorate unsanitary conditions caused by detainee misconduct. Defendant Bennett is entitled to qualified immunity from damages.

REPORT AND
RECOMMENDATION - 10

*E.     Injunctive relief.*

Plaintiff has been released from custody. He lacks standing to seek any form of injunctive relief. Nelsen v. King County, 895 F.2d 1248 (9th Cir. 1990).

## CONCLUSION

Defendant's motion for summary judgment should be GRANTED. This action should be DISMISSED WITH PREJUDICE. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on October 30, 2009, as noted in the caption.

Dated this 5th day of October, 2009.

J. Richard Creatura
United States Magistrate Judge